TOWN OF CLEARMONT, a Municipal Corporation, M. B. Shickley, Wayne Gilstrap, E. C. Workman, Albert Jennings, Philip Schuman, Anthony Panian, Carl Weber, Ray C. Yates, William C. Campbell, and Ben C. Schroeder, Appellants (Plaintiffs below),

v.

STATE HIGHWAY COMMISSION of Wyoming; and Homer Oxley, E. W. Record, Asa Jarrett, T. B. Pleak, John T. Bishop, H. D. Del Monte, and John A. Guthrie, as the present members of the State Highway Commission of Wyoming, J. R. Bromley and T. D. Sherard, Appellees (Defendants below).

No. 2929.

Supreme Court of Wyoming.

Dec. 6, 1960.

A. G. McClintock, Cheyenne, for appellants.

Norman B. Gray, Atty. Gen., and Robert L. Duncan, Sp. Asst. Atty. Gen., for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action brought by the Town of Clearmont, a municipal corporation in this state, against the State Highway Commission and its officers to stop them from constructing Interstate Highway 90 through the northern portion of this state as hereinafter mentioned. Judgment was rendered in favor of the defendants and the Town of Clearmont has appealed. The parties will be mentioned herein as in the court below or by name.

The building of highways has undergone a revolution in the last half-century or more. The first hard-surfaced road in Wyoming was a stretch of six miles long directly south of Sheridan built sometime before 1910. Oiled highways were not then known. The first oiled highway in this state was between Sinclair and Rawlins, constructed in the late twenties or early thirties. Since then oiled highways have become the rule in this state. They were narrow at first but experience has shown that wider highways have become essential for the safety of automobile travelers. In the last few years it has been deemed essential for a number of reasons to construct four-lane highways across the nation. In 1944 by an Act approved December 20, 1944 (58 Stat. 838–844), Congress enlarged the appropriations for federal aid projects and in § 7 of the Act provided for a national system of interstate highways not exceeding 40,000 miles in extent and making appropriations therefor. The Act was amended in 1956 by Public Law 627, 70 Stat. 374–387, which provided for public hearings by highway commissions in the states in reference to bypassing or going through any cities, towns or villages. The Act was again amended in 1958 (72 Stat. 902, 23 U.S.C.A. § 128). See 23 U.S.C.A. §§ 101–131, 1959 Cum.Pocket Supp., which contains the same provision in regard to public hearings above mentioned. Among the interstate highways is one numbered 90 which starts in the eastern United States and stretches west through South Dakota, the northern part of Wyoming and further west. That is the highway involved in the controversy herein, particularly that part west of Gillette to Sheridan. A map, a copy of an exhibit admitted in this case, showing the intended four-lane highway in controversy is attached. It is the one in

472

the heavy black line. Gillette is situated at the east end of the map herein shown. The road from Gillette to Sheridan heretofore existing and now existing, numbered 14–16, is shown in the less heavy line, first going north from Gillette to Spotted Horse, thence west to Leiter, thence southwest to Clearmont and Ucross and thence northwest to Sheridan. The intended new four-lane highway misses Clearmont, the nearest point being about 29 miles distant. The map is as follows:

For a number of years and particularly when wider and four-lane highways began to be constructed, consideration was given to the bypassing of cities and towns; so the legislature of this state, becoming apprehensive of what the effect of that might be, enacted a bypass law in 1950 (Ch. 18, Spec.S.L. of Wyoming, 1950) which was amended by § 1, Ch. 185, S.L. of Wyoming, 1953, which is now § 24–80, W.S. 1957. This statute will be mentioned more particularly hereafter.

Early in the year 1956 attention was called to the highway commission that a direct route from Gillette to Buffalo might well be considered. On March 17, 1956, the mayor of Newcastle appeared before the commission in the interest of such direct route. On that day was present Mr. A. C. Spann, district engineer of the Bureau of Public Roads of the federal government. Present also was the Attorney General of the State of Wyoming who stated that after study of the law it was his opinion that the bypass law passed by the legislature applied only to local situations and not to new routes constructed at considerable distance from an incorporated town where the existing highway through the town was continued in effect as a state highway and so maintained. He stated that courts have always ruled that no business has legal or vested right in the highway but that the highway can be moved and no damages to the business can be claimed. He stated that an official opinion would be given later. That opinion was rendered by Robert L. Duncan, Special Assistant Attorney General, on May 21, 1956. It reiterated the statement above mentioned and considered that after the people of Clearmont had been notified that Interstate Highway 90 might be constructed by direct route from Gillette to Buffalo the Town of Clearmont should have until March 1, 1957, to commence an action to test whether or not it had the right to object to the new road. The opinion is apparently based on the theory that if the new road did not bypass Clearmont within the meaning of the state's bypass law no objection to the

new road could exist. We understand that the Town of Clearmont was notified as mentioned, but it enlarged the issue beyond that mentioned by the Assistant Attorney General, as hereinafter mentioned, and ignored, as it had a right to do, the statement as to when an action should be commenced.

The action herein was commenced on June 12, 1958. The complaint here is voluminous and we hardly think it is necessary to set it out. Answer was duly filed by the Attorney General claiming, generally speaking, that the bypass law in this state did not apply in this case. An amendment to the complaint was filed on July 28, 1958, in which it was alleged that a contract for the construction of some bridges was let by the highway commission to Husman Brothers, Inc., so the latter was made a party herein. The case was tried before the Honorable Franklin B. Sheldon at Cheyenne, Wyoming, on March 23 and 24, 1959. On April 6, 1959, the trial court entered judgment, generally finding in favor of the defendants and making specific findings as follows:

"A. That the proposed location of highway 90 on the direct route between Gillette and Buffalo does not constitute a by-pass of the Town of Clearmont within the meaning of the so-called Anti-bypass Law (Chapter 18 Wyoming Session Laws 1950 as amended by Chapter 185 Wyoming Session Laws 1953) and, therefore, the approval of the people of said town is not required for the establishment and construction of such highway; that the said anti-bypass statute by its terms applies only to existing state highways or state and federal highways traversing or passing through incorporated cities or towns at the time of the enactment of the statute; that the law does apply to U. S. Highways 14 and 16 as presently located through the Town of Clearmont, but it is not proposed to change or divert in any way the present route of such highway in said town; that the proposed highway 90

will be an entirely new road and is to be constructed pursuant to Act of Congress as part of a national system of interstate highways, 'so located as to connect by routes as direct as practicable the principal metropolitan areas, cities and industrial centers to serve the national defense * * * [58 Stat. 842]'; that although such new highway when completed will divert most, if not all, interstate and through traffic from that portion of U. S. 14 and 16 passing through the Town of Clearmont, such diversion of traffic by the construction of a new highway in the State of Wyoming is not mentioned or contemplated by the Anti-bypass Law.

"B.  That the proposed location of highway 90 as a direct route between Gillette and Buffalo does not come within 20 miles of the Town of Clearmont and consequently the provisions of Section 116(C) of the Federal Aid Highway Act of 1956, 70 Stat. 374, requiring the Highway Department, which submits plans for an aid highway project involving the by-pass of or going through any town to hold public hearings, has no application to the circumstances in this case.

"C.  That the action of the State Highway Commission in locating highway 90 in a direct route between Gillette and Buffalo was not arbitrary and capricious as contended by the plaintiffs, but, to the contrary, the evidence discloses that the Commission and the Bureau of Public Roads had the location of the interstate highways in this area under study and consideration for approximately two years before a decision was reached; that during this period numerous surveys were made, local interests were consulted, protests were heard, and meetings were held with delegations from all the communities interested and affected; that the Bureau of Public Roads rejected the Commission's original proposal to construct said highway along the present route of U. S. 14 between Gillette and Sheridan and also along a proposed new direct route between Gillette and Sheridan via Clearmont; that the direct route between Gillette and Buffalo will reduce the length of interstate highways to be constructed in this area by some 23 miles under any other proposed routes and result in estimated savings in construction costs of $6,710,000; that the traffic volume over U. S. 14 and 16 decreased 15% during the years 1953, 1954 and 1955, while traffic volumes over parallel routes in Montana increased 34%, and during the same period tourist travel through the east or Cody entrance into Yellowstone Park decreased 7%, while the Cooke City entrance in Montana increased 16.9%, all of which figures disclose the urgent need for improved highway standards in this part of the State in order to preserve that part of its economy catering to tourist travel; that the foregoing information and circumstances were before the Commission and the Bureau of Public Roads for their respective consideration at and prior to the time they made their decision to locate the direct route between Gillette and Buffalo, and there is no evidence to indicate that they have not selected the most desirable route to serve the widest interests and the economy of the greatest number, regrettable as it may be that the Town of Clearmont will be adversely affected by this change.

"It is therefore adjudged and decreed That the application of the plaintiffs for a permanent injunction to restrain the defendants from proceeding with the establishment and construction of interstate highway 90 on a direct route between Gillette and Buffalo is hereby denied, and the plaintiffs' complaint is dismissed at plaintiffs' costs.

"Dated this 6th day of April, 1959."

The case comes here on appeal from the judgment of the district court.  In the

meantime and on January 4, 1957, the highway commission determined that a direct route between Gillette and Buffalo should be constructed.

1. The State Highway Commission contends that the bypass law above mentioned is unconstitutional in that it is a local law and is not of uniform operation in the state and that it applies only to incorporated towns of less than 20,000 people and makes no mention of unincorporated towns. We are in doubt that the classification is unreasonable. Incorporated towns and cities are situated differently from unincorporated towns or cities in that the burdens of the inhabitants of such incorporated towns or cities are apt to be much greater than those of unincorporated towns. Furthermore, the legislature may have considered that towns of 20,000 people could not be seriously affected by the fact that national interstate highways bypass them. In any event, we hardly think that it is necessary to definitely decide at this time whether or not the law above mentioned is unconstitutional.

2. The main contentions of counsel for Clearmont are: First, that the location of Interstate Highway 90 between Gillette and Buffalo is contrary to the bypass law of the legislature hereinafter set out; second, that the highway commission failed to comply with the federal law in reference to public hearings or giving opportunity for hearing provided in the federal law hereafter specifically set out; and, third, that the highway department acted arbitrarily and capriciously in establishing Highway 90 above mentioned and that it abused its discretion in doing so. Incidental matters will be stated hereafter and we shall consider the above-mentioned contentions in their order.

The Bypass Law: Section 24-80, W.S.1957, states in part as follows:

"It is hereby declared to be the public policy of the State of Wyoming that no state highway or state and federal highway now traversing or passing through any incorporated city or town of the State of Wyoming shall be so moved or relocated in such city or town as to divert the present route of the same in such city or town nor to by-pass such city or town except with the express approval of the people thereof."

A further provision states that ballots shall be furnished for an election by the people which shall ask the electors of the city or town to vote either "For the Proposed Change" or "Against the Proposed Change." Section 24-82, W.S.1957, part of the same Act, provides:

"This enactment shall have no application to the usual and necessary diversion of traffic for purposes of road repair or reconstruction, nor shall it apply to any city having a population of more than 20,000 people at the last preceding federal census, nor shall the provisions of this act * * * be retroactive from the effective date of this act."

It is hard to see how counsel for plaintiffs found any basis for the present suit insofar as the legislation just quoted is concerned. No matter how sympathetic with the people of Clearmont we may be—and we are sympathetic—we have no power to alter the language of the foregoing legislation or to distort the plain meaning of this language. The legislature did not simply provide that no city or town should be bypassed. It provided in plain English and language that cannot be misunderstood that an existing highway in a city or town cannot be moved, relocated or changed so as to bypass such city or town without the choice of the people of the town or city. It failed to mention any new highway if the existing highway is let alone, and it appears herein that so far as the present highway through Clearmont is concerned it is not intended that it should be abandoned. It is the change from the existing highway to which reference is made in the bypass law. This is emphasized by the provision that the people shall vote either "For the Proposed Change" or "Against the Proposed Change." It is well settled that when the language of a statute is plain and unambiguous there is no room for construction and the court is powerless to give it a different meaning. State ex rel.

Fawcett v. Board of County Com'rs of Albany County, 73 Wyo. 69, 273 P.2d 188; 50 Am.Jur. Statutes § 225. In other words, this court is not vested with the authority to usurp the function of the legislature in matters in which it has the power to legislate and it is not questioned that in the matter before us the legislature had full and exclusive legislative power.

The legislature has made no attempt to define the term "bypass" except as above mentioned, and we can readily see the difficulty with which it would have been confronted if it had attempted to do so. Counsel for Clearmont contends that any new highway which diverts traffic from one already existing is a bypass. If that was the intention of the legislature, it should have made that known in more appropriate and plainer language than that contained in our statute. We are unable to glean any such intention from the language actually used. It may not be without interest to call attention to Plaintiffs' Exhibit 11 which seems to be a report to the Governor in regard to the national system of interstate highways, dated January 1957. It sets out an example of a bypass route, which is one close to the limits of a city or town.

■ The new Interstate Highway 90 is some twenty-nine miles from Clearmont. If the highway department could not construct a new highway twenty-nine miles from an incorporated city or town, could it do so at a distance of forty, fifty, sixty or one hundred miles away? Obviously, without any other guide than that contained in the legislation before us, construction of any new highway is left to the judgment of the highway commission and we have been unable to discover herein that this court has any discretion or any power to interfere with actions of the highway department. It may be that the legislature could have found a better way than it did in defining a bypass and counsel for Clearmont thinks that it did. He calls our attention to the fact that an amendment was offered in the senate in the session of 1953 providing that the legislation in reference to bypassing should not apply "to the construction of any

highway not nearer than ten miles to the city or town affected"; that the bill then was sent to the house which did not agree to the amendment; and that the bill was finally passed without amendment. Counsel contends that we must pay attention to the legislative history of an act in order to determine its meaning, citing Burnham Hotel Co. v. City of Cheyenne, 30 Wyo. 458, 222 P. 1. We readily agree to that rule of law but we think that it has no application herein. In the first place, the Act in question is plain and unambiguous. In the second place, the provision that the Act should apply only to a change or relocation of a highway still remained in the Act. In the third place, the fact that the house did not want to agree that the Act should not apply if the change or relocation should be ten miles from the city or town does not show that the house would not have agreed if the senate had said that the Act should not apply to highways fifteen, twenty or thirty or more miles away. We fear that counsel is engaged in mere conjecture in believing that the legislative history shows that the Act in question has any application herein. So we think that so far as the present bypass law in the state is concerned it has, under the facts herein, no application to the Town of Clearmont.

■ 3. Counsel for Clearmont also contends that the highway commission failed to comply with the federal law relating to public hearings when bypassing is concerned. That law, § 116(c), 70 Stat. 385, was as follows:

"Any State highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town, or village, either incorporated or unincorporated, shall certify to the Commissioner of Public Roads that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic effects of such a location: *Provided,* That, if such hearings have been held, a copy of the transcript of said hearings shall be sub-

mitted to the Commissioner of Public Roads, together with the certification."

Counsel for the highway commission contend that the location and construction of Interstate Highway 90 does not involve any bypassing or going through Clearmont and that hence the federal law has no application in this case. Counsel for plaintiffs contends the contrary. That is evidently based on the thought that the state's bypass law applies. We have already seen that it does not, so that if any bypassing is involved it is by reason of a much broader interpretation of the term than that used by our own statute. We have seen that to adopt such a broader interpretation makes it practically impossible for this court or anyone else to say at what distance the term should be applied. We have considerable doubt that the federal law above quoted applies but, passing that point, we shall assume that it does. Counsel for the highway commission contend that the federal law has been fully complied with. Counsel for plaintiffs contends the contrary. We shall consider that now.

When the highway commission approved of the route from Gillette to Buffalo on January, 4, 1957, it recited that numerous hearings had been held and voluminous reports read and considered on this matter, including a joint economic report prepared by the planning division of the highway department in connection with the Bureau of Public Roads, and that the commission felt that it had received sufficient information and had given adequate study to the matter to allow it to reach the proper decision. The secretary of the highway commission certified on May 2, 1958, that the highway department had considered the economic effects of the foregoing location. It is beyond controversy that numerous public hearings were had during the year 1956 with the highway commission or officials of the highway department in reference to the location of a route between Gillette and Buffalo or other points. At some of these hearings representatives of Clearmont were present. Numerous written reports, statements and letters, too voluminous to be set out herein, were submitted to the highway commission or other highway department officials, involving comparative costs of construction and maintenance and considering the economic consequences of the location of the highway. Defendants' Exhibit A briefly sets out in chronological order what was done in connection with the interstate highway in question from September 1955 to January 4, 1957, the date when the present route was adopted. These hearings were had not alone in Cheyenne but also at Buffalo and Sheridan. Apparently a whole day was consumed at the hearing before the highway commission on January 3, 1957, with people of Clearmont and other places present. Various papers were read to the commission at that time and we have no doubt that many oral statements and arguments were also made. Counsel for Clearmont, admitting these facts, states as follows:

"* * * The mere fact that someone claiming to represent the interests of northeastern Wyoming was permitted to read a statement on the economic consequences of the establishment of the new highway does not constitute a hearing in any true sense of the word and it does not constitute a consideration of the economic consequences of the location."

We think that this is taking a rather narrow view of the situation. The economic consequences are, doubtless, mainly those relating to tourist travel. We presume that the members of the highway commission did their duty. We may assume that they were men of reasonable intelligence and, when statements in reference to the route were made to them and the economic consequences stated, the members gave some attention to these matters, reasonably well understood what was being stated and gave the matters consideration. We cannot assume that what the commission heard or read was not understood and was given no consideration. As a matter of fact, any person of intelligence knows by merely looking at the map that most of the tourist travel would probably be diverted from Clearmont

by Interstate Highway 90, and it is hard to understand counsel when he states that when these various meetings were held to consider Interstate Highway 90 they did not constitute a hearing in the true sense or that the economic consequences were not considered. The hearings before the highway commission or the officials of the highway department were not essentially different from the hearings in this court when we listen to the arguments of counsel. Counsel perhaps means that the economic consequences were not considered in sufficient detail. He seems to insist that the highway commission should have made the detailed study which it made in southern Wyoming in 1957–58 as shown by Exhibit 12 which was not admitted in evidence. That exhibit shows, among other things, the income from tourist travel and from local travel. No such detailed study was made in northern Wyoming but that does not show any violation of the federal law. That law does not state to what extent the economic consequences should be considered and that the dollars and cents from tourist travel should be ascertained. When the federal authorities decided, as they evidently did, that sufficient consideration was given to this matter, it is hard to see that this court should hold the contrary. In addition to numerous meetings which were held in 1956, the highway commission called a meeting for April 8, 1958, in the City Hall of Buffalo, Wyoming. Notice of public hearing was published in the Buffalo Bulletin on March 27, 1958, and April 3, 1958. A hearing was actually held in Buffalo on that date. It does not appear just how many were present though Mr. Stapp of the highway department, who presided at the meeting, stated that he was happy that so many people were in attendance. Counsel for Clearmont admits that a certificate of this hearing was transmitted to the Bureau of Public Roads but contends that it was worthless for the reason that Mr. Stapp stated that the meeting was not necessary for the reason that the bypass law of the state had no application. That statement was immaterial. It could not alter the fact that a hearing was actually had, nor can the public hearings heretofore mentioned, at which representatives of Clearmont were present, be ignored. It appears from the transcript of the hearing at Buffalo that Mr. Stapp stated that Interstate Highway 90 was located after an exhaustive engineering study. He gave a general idea of the cost of the road, said that it would necessarily benefit some and inconvenience others, and in reply to questions stated that the highway department had studied the economic consequences of the road as intended to be constructed. The witness Sherard testified that the highway department received formal approval of the Bureau of Public Roads of its action in locating Interstate Highway 90 and federal funds have apparently been used thereon. Exhibit JJ 10, dated January 1959, which is a report from the Secretary of Commerce to the Senate and House of the federal government purporting to show the progress so far made in the construction of interstate highways, contains a map which shows Interstate Highway 90 between Gillette and Buffalo. Considering all these matters, it would seem clear that the Bureau of Public Roads deemed the certificate submitted to it by the State Highway Department and the public hearings that were had to be sufficient to comply with the federal law above set out. The matter was primarily one concerning the federal government which pays 93 percent of the cost of construction. Since it determined that the Congressional Act above mentioned was fully complied with and approved the construction of Interstate Highway 90, this court is hardly in a position to take a different position and hold the contrary, especially in view of the facts above mentioned. We must hold, accordingly, that the contention here discussed is not well taken. The case of Binghamton Citizens Penn-Can Route 17 Highway Committee v. Federick, 7 A. D.2d 170, 180 N.Y.S.2d 913, is not in conflict herewith in view of the facts herein.

■■ 4. As noted before, counsel for Clearmont contends that the highway commission acted arbitrarily and capriciously

and abused its discretion in locating and constructing Interstate Highway 90 between Gillette and Buffalo. The record herein is voluminous and replete with exhibits. A great deal of pressure was apparently brought to bear upon the commission, many, ultimately including Mr. A. C. Spann of the Bureau of Public Roads, favoring the route from Gillette to Buffalo, others opposing it. The commission appears at one time to have favored its construction along Highway 14–16 but ultimately changed its mind. The commission had to make a choice. The mere fact, of course, that it made what counsel for Clearmont calls the wrong choice does not of itself constitute an abuse of discretion. If the highway commission had violated any specific statute governing the matter, this court would, of course, have the right to interfere and prevent any such violation. We have seen that in locating the highway the highway commission did not violate the bypass law of this state nor the Congressional Act heretofore mentioned and we know of no other statute which has been violated in this connection. So the question remains as to what the law is in the absence of such violation. If in the locating and constructing of highways the highway commission is confronted every time with the question as to whether or not it abused its discretion, then it would seem that the ultimate power of locating and constructing roads or highways is largely taken from the commission and vested in the courts. That such result would be undesirable is quite clear. Courts are not equipped to determine such questions. Section 24–37, W.S.1957, provides that it shall be the duty of the State Highway Commission from time to time to designate public highways to be known as state highways. Section 24–40, W.S.1957, provides that the State Highway Commission is authorized to enter into contracts and agreements with the United States Government relating to the construction and maintenance of roads. Section 24–71, W.S.1957, provides that an access facility is defined as a highway or street especially designated for through traffic. Section 24–72, W.S.1957, provides as follows:

"The highway authorities of the state, counties, cities, towns and villages, acting alone or in cooperation with each other or with any federal, state, or local agency of any other state having authority to participate in the construction and maintenance of highways, are hereby authorized to plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide access facilities for public use whereever such authority or authorities are of the opinion that traffic conditions, present or future, will justify such special facilities * * *."

See H K D Homesite Co. v. Board of County Com'rs of Laramie County, 69 Wyo. 236, 240 P.2d 885. There is nothing in our statutes which gives courts any power to locate highways. Thus the legislature in this state has left the location and construction of highways exclusively to the highway authorities, and the general rule is that, at least in the absence of statutory provisions, the determination of the necessity or advisability of locating and constructing highways is exclusively in the power of the tribunal created for such purpose by the legislature and the courts have no jurisdiction in such matters. Thus the Supreme Court of New Hampshire stated in Thompson v. Conway, 53 N.H. 622, 626:

"The statute makes the commissioners the tribunal to judge of the necessity of the highway. In this respect, the court has no power to revise the judgment of the commissioners. It may be that, in judging of the necessity of the highway, or in receiving or rejecting testimony, they erred. They probably frequently do. But they are a tribunal taken from among the people, elected with reference to their supposed fitness for the duties of the place, and are probably as capable of judging of the necessities of the public in this particular as any other tribunal that could be selected."

In Sherman v. Buick, 32 Cal. 241, 253, 91 Am.Dec. 577, the Supreme Court of California had this to say:

"To lay out and establish roads or highways is exclusively within the power and control of the Government. To do so is one of its most important and onerous duties. Roads or highways, over which the Government has supervision and which it is bound to provide, include not only the chief and principal thoroughfares which traverse the country, but also those of less general use which are lateral and serve to connect neighborhoods and individuals with the main arteries of trade and travel. Whenever the necessities or the convenience of the public, which includes everybody, requires a road, for the purposes of trade or travel, it is the duty of the Government to provide one, and, if necessary, to take private property for that purpose, upon making just compensation. Whether a given road will subserve the public need or convenience is a question for the Government alone to determine. The Courts have nothing to do with it. * * *"

In the case of Vedder v. Marion County, 28 Or. 77, 36 P. 535, 537, 41 P. 3, the Supreme Court of Oregon stated:

"* * * In Commissioners v. Bowie, 34 Ala. 464, the court says: 'Upon the question of the expediency of opening or altering a public road, that court exercises a quasi legislative authority, and its decision is not revisable. In the exercise of that authority, it does not act alone upon evidence produced according to legal rules, but is guided to some extent by its knowledge of the geography of the country, the wants and wishes of the people, and the ability of the neighborhood to keep the road in repair.' The legislature has delegated to the county court [not a judicial court] the authority to establish, alter, and vacate county roads, and, as the legislature may determine when the necessity for a public road exists, so the same authority may be exercised by the county court; and, if there were no statute vesting it with this discretion, the court, by implication, could exercise such discretion, unless prohibited by statute. Whether a proposed road will subserve the public need or convenience is a question for the legislature, and not for the judiciary (Sherman v. Buick, 32 Cal. 241; Com. v. Roxbury, 8 Mass. 457); and hence the county court, in determining its utility, acts in a legislative capacity. The authority is not only given by implication, but the statute (section 4065), in positive terms, grants this power to the county court, and authorizes it to exercise a discretion in the matter; and hence the conclusion reached by the county court upon these legislative questions is not subject to review (State v. Bergen, 24 N.J.Law, 548). * * *"

In the case of Evans v. Edelbrock, 106 Kan. 233, 187 P. 664, 665, the Supreme Court of Kansas had this to say:

"* * * However, he [appellant] contends that he was entitled to have the orders of the board reviewed on appeal upon the grounds that they were unreasonable, arbitrary, and subversive of private rights, and his contention is that the vacation of the Thoren road and the re-establishment of the Miller road was both unreasonable and unwarranted. Whether the relocation was practical and convenient and the new road was of public utility and could be made without unreasonable expense were questions which called for an exercise of the legislative powers of the board. It has been decided that the vacation, relocation, and establishment of roads largely involves the legislative and administrative powers of the board, and that these functions are beyond the jurisdiction of the district court. * * *"

In the case of Fohl v. Common Council of Village of Sleepy Eye Lake, 80 Minn. 67,

82 N.W. 1097, 1098, the Supreme Court of Minnesota stated:

"The power and authority to establish and lay out streets and highways is legislative, and all questions of expediency and necessity are exclusively committed to that branch of the government. The power may be delegated to municipalities or municipal boards or commissioners, and their conclusion and determination as to the propriety and necessity of a proposed street or highway is as final and conclusive as though the legislature itself had determined the same. Such questions are not open to judicial review. * * *"

In the case of Otto v. Conroy, 76 Neb. 517, 107 N.W. 752, 753, the Supreme Court of Nebraska stated:

" * * * It is quite clear that neither the statute nor the Constitution intended to confer any such power or duty [of revising the judgment of the highway tribunal] upon the courts. On the contrary it is quite certain, both upon principle and authority, that the decision of the necessity or expediency of establishing, maintaining or vacating a public road is committed exclusively to county boards and other like legislative and governmental agencies and is not subject to judicial review. * * *"

The Supreme Court of North Carolina in the case of Pridgen v. Bannerman, 53 N.C. 53, 55, stated:

" * * * It is conceded that the question of the necessity for the new road was one, the decision of which, in the Superior Court, is not the subject of re-examination in this Court."

Numerous other cases to a like effect are to be found in the Annotation in 22 L.R.A., N.S., 1, 99–101 and the same rule is laid down in 25 Am.Jur. Highways § 19. See also 13 R.C.L. Highways § 73. A like rule is laid down by the eminent author, Dillon, 1 Municipal Corporations, 5 ed., §§ 242, 243. The author, after stating in § 242 that discretionary powers cannot be judicially controlled, states in § 243, p. 459:

"So, also, where, by its charter, a municipal corporation is empowered, if it deems the public welfare or convenience requires it, *to open streets or make public improvements thereon*, its determination, whether wise or unwise, cannot be judicially revised or corrected. * * *"

Many years ago it was laid down in Wiggin v. Mayor, etc., of New York, N.Y.Ch., 9 Paige 16, that passing an ordinance in relation to opening streets is in the exercise of legislative and not judicial power. A resolution by highway authorities to locate a highway is, of course, of the same nature as an ordinance or resolution of a municipal council relating to a like subject.

We may refer to the decisions called to our attention in the brief for the highway commission relating to the diversion of traffic, although these cases mainly discuss the question of damages. It is interesting to note what was stated in the case of Walker v. State, 48 Wash.2d 587, 295 P.2d 328, 331, an action for an injunction:

"Plaintiffs have no property right in the continuation or maintenance of the flow of traffic past their property. They still have free and unhampered ingress and egress to their property. Once on the highway, to which they have free access, they are in the same position and subject to the same police power regulations as every other member of the traveling public. Plaintiffs, and every member of the traveling public subject to traffic regulations, have the same right of free access *to* the property *from* the highway. Rerouting and diversion of traffic are police power regulations. Circuity of route, resulting from an exercise of the police power, is an incidental result of a lawful act. It is not the taking or damaging of a property right."

So the Supreme Court of California, commenting on the same subject in People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799, 804, stated as follows:

" * * * We recognize that the defendants have no property right in any particular flow of traffic over the highway adjacent to their property, but they do possess the right of direct access to the through traffic highway and an easement of reasonable view of their property from such highway. If traffic normally flowing over that highway were re-routed or if another highway were constructed which resulted in a substantial amount of traffic being diverted from that through highway the value of their property might thereby be diminished, but in such event defendants would have no right to compensation by reason of such re-routing or diversion of traffic. The re-routing or diversion of traffic in such a case would be a mere police power regulation, or the incidental result of a lawful act, and not the taking or damaging of a property right. * * *"

If a party is not damaged—injured—in a legal sense by reason of diverting traffic it is rather difficult to see that an injunction would lie to prevent it. That it does not lie in such case was directly held in Walker v. State, supra.

█ We cannot ignore this great array of authorities, hold to the contrary, and invade a province which, according to the unanimous, or almost unanimous, opinion of the courts of the land, does not belong to the judiciary, at least in the absence of specific legislation to the contrary. These authorities make it quite clear that this court has no power, at least under our present law, to interfere with the location of the highway here in question. So it was not without truth that Mr. Carl Rott, editor and publisher of the Sheridan Press, stated at a hearing before the highway commission on January 3, 1957, as shown by an exhibit in this case, that: "This commission is vested with the power to destroy far more deadly and permanent than any taxing power." The statement is, of course, subject to the limitation that the legislature has the ultimate control of the matter of highways, and that the highway commission cannot act contrary to the provisions made by that body.

It follows from what we have said that matters which counsel for Clearmont consider as having a bearing on the abuse of discretion of the highway commission in locating Interstate Highway 90 and the ruling of the trial court in that connection are immaterial. That is true, for example, with the fact that Plaintiffs' Exhibit 12 heretofore mentioned was excluded, that certain interrogatories principally pertaining to the economic effect of locating Interstate Highway 90 were not permitted to be answered, and that certain questions put to Robert O'Connell and Alvin Bastron also mainly relating to the economic effect of locating the foregoing highway were not permitted to be answered. So, too, matters pertaining to Highway 14–16 are not at this time properly before us.

We find no error committed by the trial court and we are constrained to hold that its judgment should be, and it is hereby, affirmed.

Affirmed.