Ronald Leroy KENNEDY, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

Jerry Lee JENKINS, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

Nos. 4454, 4455.

Supreme Court of Wyoming.

Jan. 27, 1977.

Donald E. Chapin, G. L. Spence, Casper, and John E. Ackerman, Houston, Tex., for appellants.

V. Frank Mendicino, Atty. Gen., David A. Kern, Senior Asst. Atty. Gen., Timothy J. Judson and Arthur A. Hanscum, Asst. Attys. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, THOMAS and ROSE, JJ., and ARMSTRONG, District Judge Retired.

PER CURIAM.

These defendants were convicted of the crime of the first degree murder of Amy Allice Burridge under § 6–54(b), W.S.1957, 1975 Cum.Supp., and based thereon the trial court sentenced them to death as required by the statute.[1]

Appellants pursue this appeal, contending that the statute under which they were sentenced is unconstitutional under both the United States Constitution and the Constitution of the State of Wyoming, and the Eighth and Fourteenth Amendments to the Constitution of the United States. Appellants assert a great variety of reasons for such result, all of which have been considered by this court, but because of the disposal which this court must make of these matters they will not be detailed or separately discussed in this disposal.

In addition, the defendant Kennedy has, since the original argument upon the appeal, raised a claim of asserted error in the instructions for failure to comply with the provisions of § 7–242, W.S.1957, which asserted error will be discussed later herein.

Because of the character of the contentions raised which involve only questions of law, we will not repeat in this opinion the unpleasant and revolting factual situation from which these charges arose.

The principal thrust of appellants' brief and argument is directed at the constitutionality of our statute, § 6–54(b)(ix), W.S. 1957, 1975 Cum.Supp.,[2] and they rest their argument upon two bases, alleging first that capital punishment statutes are unconstitutional per se, and particularly that our

---

1. The information from which these defendants were tried contained two counts of which they were also convicted, being that of forcible rape of Becky Thompson under § 6–63(A), W.S. 1957, 1975 Cum.Supp., and sentenced to a term of not less than 35 years to life for such crime; and under § 6–69, W.S.1957, of the crime of assault with intent to commit murder upon Becky Thompson, and sentenced to a term of not less than 13 nor more than 14 years. Since no appeal has been taken from these convictions they will receive no further notice, nor will the sentences thereunder be affected by this decision.

2. "(b) Upon conviction of murder in the first degree, a mandatory sentence of death in the manner provided by law shall be imposed if the trier of fact finds the offense involves the following course of conduct:

 * * * * * *

"(ix) Murder committed by a defendant to conceal his identity or to conceal the fact of the commission of a crime, or to suppress evidence;"

statute is unconstitutional in its present form. Since we make disposal of these appeals under the second of these contentions the factual situation is not pertinent to such disposal.

There is no area of the law that has occupied so much attention by appellate courts and legal writers since the decision was announced in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, rehearing denied 409 U.S. 902, 93 S.Ct. 89, 34 L.Ed.2d 163. There is almost a limitless expression of authority and analyses produced from these sources, which could be utilized to produce an encyclopedic opinion, but this court feels that these opinions and authorities may be carefully examined and that there can be extracted therefrom certain obvious and necessary requirements which must be included in a capital punishment statute to withstand constitutional assaults. No amount of discussion or analysis can alter, change or modify the requirements of the United States Constitution by which we are bound.

Dating from *Furman* many states, in an obvious attempt to comply with what were then widely thought to be the guidelines promulgated by that case, placed what appeared to be a reasonable interpretation thereon and responded thereto by enacting first degree murder statutes which under certain factual circumstances required the infliction of a mandatory death penalty. Although at the time this seemed a reasonable response and to comply with the commandments of *Furman*, in retrospect it appears nothing could have been further from the truth.

■ A statute imposing a mandatory death penalty for murder when its commission involves certain aggravating circumstances is violative of the Eighth and Fourteenth Amendments, *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 2991–2992, 49 L.Ed.2d 944; *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974; *Williams v. Oklahoma*, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215; and *Rockwell v. Superior Court of Ventura County*, 18 Cal.3d 420, 134 Cal.Rptr. 650, 556 P.2d 1101;

*State v. Rumsey*, S.C., 226 S.E.2d 894. To constitutionally exact a death penalty the statute must contain standards provided by the legislature controlling the exercise of the discretion of the sentencing authority, which are totally lacking in our statute. The lessons of *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Roberts v. Louisiana*, supra; *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929; *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; and *Woodson v. North Carolina*, supra, demonstrate that to successfully withstand attack upon constitutional grounds there must be provided in the statute standards to guide and control the exercise of discretion by the sentencing authority in its determination of the propriety of the application of the death sentence, or the alternative of a term of life imprisonment. There must further be provided a procedure by which the fact finder can consider and examine any and all aggravating and mitigating circumstances and the character and situation of the individual defendant, upon which the final determination is made. A proper record of the findings which are used as the basis for the infliction of this penalty must be preserved to enable a reviewing court to determine the reasonableness and the propriety of the application of such sentence. The Wyoming statute under scrutiny does not meet these requirements.

■ In apparent recognition of this the State, in the reargument of these cases ordered after the opinion was delivered in *Woodson* and others, has quite fairly conceded that at least the sentencing process in these cases was unconstitutionally applied as to these defendants but has urged the court to remand these cases to the district court for a rehearing and sentencing under rules to be promulgated by this court in compliance with the guidelines set out in *Gregg v. Georgia*, supra; and contends that this court has the power to do this by virtue of § 6–54(d), W.S.1957, 1975 Cum.Supp., which is as follows:

"(d) The judgment of conviction and sentence of death shall be subject to auto-

matic review by the supreme court of Wyoming. Such review shall have priority over all other cases, *and shall be heard in accordance with rules promulgated by the supreme court.*" (Emphasis supplied.)

It may well be suggested that this section is clearly inapplicable to the problem which the State seeks to cure. The entire section must be read and the review which is contemplated by this section is of "the judgment of conviction and sentence of death" which is made the subject of automatic review. However, because of the seriousness of this case we shall not make disposal of this contention in sole reliance thereon.

This court has long recognized that it must not usurp or encroach upon the legislative function, *Town of Clearmont v. State Highway Commission*, Wyo., 357 P.2d 470, 476; *Cowan v. State ex rel. Scherck*, 57 Wyo. 309, 116 P.2d 854, 859, 136 A.L.R. 1330. When the constitutionality of a statute is in question "the plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary," *State v. Stern*, Wyo., 526 P.2d 344, 346.

The suggestion of the State, if we were to embrace it, would involve judicial repeal and amendment of the statute by asking us to read the word "mandatory" out of the statute and to eliminate from the effect of said statute the mandatory penalty which it was clearly the intention of the legislature to provide. In addition, it would be necessary to add a phrase modifying this penalty and providing certain guidelines, which we, not the legislature, would be forced to promulgate. This would clearly be violative of the authorities above mentioned.

The case of *Rockwell v. Superior Court of Ventura County*, supra, met an identical suggestion directly, and phrased it in a manner which we are able to adopt and approve:

"The People argue finally that the defects in the California statutory scheme for imposition of capital punishment can be overcome by judicially mandated procedures, which this court should pro-nounce because the Legislature intended to write a constitutional death penalty law. They urge that we find the mandatory 'shall' to be permissive in those cases in which the Legislature has directed that the penalty 'shall' be death, and suggest that since the form of the hearing at which judgment is pronounced is not set out in these statutes this court may prescribe procedures that will satisfy the requirements of the Eighth and Fourteenth Amendments. We decline the People's invitation. They ask us not to interpret, but to rewrite the law in a manner which we have shown would be contrary to the manifest legislative intent in enacting sections 190 through 190.3. Decisions as to which criminal defendants shall suffer the death penalty, whether these decisions shall be made by judge or jury, whether and to what extent a jury determination is reviewable by the trial court and/or the reviewing court, and the scope of responsibility to be given this court to safeguard against arbitrary imposition of the death penalty are matters of legislative concern. Were this court to attempt to devise the necessary procedures and criteria we would not only invade the legislative province, but would also be in the position of having to pass objectively on the constitutionality of procedures of our own design. * * *" (556 P.2d at 1116.)

The separate contention raised by the defendant Kennedy is that there was error in the verdict submitted to the jury because of the failure of that verdict to include the following:

" * * * each verdict shall also contain the words, 'and find that defendant was sane at the time of the commission of the offense.' * * *" (Section 7–242(c), W.S.1957.)

This did not appear in the verdict submitted to the jury, although the verdict did include the words "not guilty by reason of insanity" as to all counts. No objection was made to the form of this verdict nor was any other verdict proposed at the time this was submitted which would have included this ele-

ment. We are convinced that had this been called to the trial court's attention this would have been done. Error cannot be asserted for the first time on appeal, *Wright v. State*, Wyo., 466 P.2d 1014, 1016, and *Connor v. State*, Wyo., 537 P.2d 715, 717. An examination of all the instructions given by the court reveals that the jurors were clearly advised several times in the instructions that if there was any reasonable doubt as to the sanity of the defendant Kennedy at the time of the alleged offenses it was their duty to find him not guilty by reason of such insanity. One of these instructions also carefully defined legal insanity and the various tests for such legal insanity which must be employed in determining the defendant's legal responsibility; and the jurors were directly advised by this instruction that if they had a reasonable doubt as to the sanity of the defendant Kennedy it was their duty to find him not guilty, and were advised that if they did so find defendant Kennedy insane they were to mark with an "X" the space provided for that purpose preceding the holding "not guilty by reason of insanity."

We must consider the instructions as a whole, *Hoskins v. State*, Wyo., 552 P.2d 342, 348, and *Elmer v. State*, Wyo., 463 P.2d 14, 22, certiorari denied 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82, and must assume that the jury did its duty and followed the court's instruction, *Dobbins v. State*, Wyo., 483 P.2d 255, 259, and *State Highway Commission v. Peters*, Wyo., 416 P.2d 390, 396. In light of the clear presentation of this question to the jury by virtue of these instructions we find no difficulty in inferring, and find no other inference available but that the jury did find this defendant was sane as a condition of its verdict. In light of these facts, no prejudicial error was present and the appellant Kennedy has failed in his burden to demonstrate such prejudice, *Cosco v. State*, Wyo., 503 P.2d 1403, 1406, certiorari denied 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693.

We have heretofore recognized that plain or fundamental error is deemed applicable in capital cases, *Pixley v. State*, Wyo., 406 P.2d 662, 669. This omission in the form of the verdict was not plain or fundamental error as contemplated by Rule 49, W.R. Cr.P.; *Reeder v. State*, Wyo., 515 P.2d 969, 973, mandamus denied 419 U.S. 1018, 95 S.Ct. 509, 42 L.Ed.2d 303; *Hampton v. State*, Wyo., 558 P.2d 504.

Pursuant to our statutory provision for automatic review in such cases, § 6–54(d), supra, we have independently examined the entire record for reversible error and find none except the impropriety of the sentence.

 The severability clause found in § 2, Ch. 136, S.L. of Wyoming 1973, enacted with the amended § 6–54, reads:

"If any provisions of this act or the application thereof to any person or circumstances, including any one or more of the above enumerated instances in which a mandatory sentence of death shall be imposed, is held unconstitutional or otherwise invalid, such unconstitutionality or invalidity shall not affect any other provisions or applications of this act, and to this end the provisions of this act are declared severable."

This clearly shows the intention to anticipate the result which was necessarily reached herein.

While we hold that § 6–54(b), W.S.1957, 1975 Cum.Supp., is unconstitutional in its entirety and cannot be applied to these defendants, the invalidity of this subsection does not render invalid their underlying convictions of first degree murder, *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 2570–2571, 33 L.Ed.2d 706; *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 1777, n. 21, 20 L.Ed.2d 776. Inasmuch as these defendants were tried and convicted of first degree murder, their authorized punishment is clearly within § 6–54(e), W.S.1957, 1975 Cum.Supp., and we are forced to sever or disregard the words "if the offense does not involve a course of conduct as described in subsection (b) of this section" so that it will read, "Upon conviction of murder in the first degree, the person convicted shall be sentenced to imprisonment for life." See

*Riggs v. Branch,* Okl.Cr., 554 P.2d 823; *Blackwell v. State,* 278 Md. 466, 365 A.2d 545; and *Rockwell v. Superior Court of Ventura County,* supra, wherein each court relied on the existence of severability clauses to resentence to life imprisonment persons convicted of capital murder under unconstitutional statutes.

Reversed and remanded for action of the district court in conformity herewith.